IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| Maria Gorrasi : | |
|    9028 Bush Creek Circle : | |
|    Frederick, MD 21704 : | |
| : | |
|    Plaintiff, : | Civil Action No. |
| : | 1:19-CV-2595 |
| v. : | |
| : | **Jury Demanded** |
| Alex Azar, Secretary of U.S. Department of Health : | |
| and Human Services, National Institutes of Health : | |
|    200 Independence Avenue, SW : | |
|    Washington, DC 20201 : | |
| : | |
|    Defendant. : | |

## COMPLAINT

Plaintiff, Maria Gorrasi, brings this action alleging discrimination, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), the Age Discrimination in Employment Act (ADEA), and the Rehabilitation Act against her employer, Alex Azar, Secretary of the U.S. Health and Human Services, National Institutes of Health.

**I.      JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the subject matter of the instant complaint Pursuant to 28 U.S.C. § 1331 because the plaintiff brings an action arising under the laws of the United States.

2.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) because the

1

entity resides, in whole or in part, in this District.

**II.     PARTIES**

3.      Plaintiff, Maria Gorrasi ("Gorrasi") at all times material to the averments of this Complaint, is a citizen of the state of Maryland and an employee of the U.S Department of Health and Human Services, National Institutes of Health ("NIH").  Plaintiff serves as a Human Resources Specialist at the GS-14 level in NIH's Office of Human Resources.

4.      Defendant, Alex Azar, Secretary of the Department of Health and Human Services, is a is a United States executive agency and at all times material to the averments of this Complaint, employed Plaintiff Gorrasi.

**III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5.      Plaintiff exhausted all administrative remedies. Plaintiff timely sought EEO counseling with an EEO officer within forty-five (45) days of learning of the alleged discriminatory actions. Plaintiff timely filed a formal complaint on February 9, 2016.  NIH issued a final decision which was received by Plaintiff on May 30, 2019.  Accordingly, Plaintiff timely files her cause of action within 90 days of receipt of the Agency's final order.

**IV.    FACTS**

    **A.      Background**

6.      Gorrasi is Hispanic, over the age of 40, and has diabetes, a hearing impairment and other medical conditions which impact her employment and/or require accommodations.

7.      Gorrasi has worked in the human resources and/or the employee relations field for more than forty-one (41) years.   Gorrasi joined NIH in 1995 and has served as a Human Resources Specialist since that time.  During her tenure, Gorrasi has provided human

relations/employee relations, labor relations, worker's compensation and EEO services to approximately 19,000 employees.

8. Until her involuntary reassignment to a non-supervisory position just prior to the selection for the Office of Human Resources Deputy Director position, Gorrasi served for a number of years as a team lead and supervisor, supervising a staff of five (5) Employee Relations Specialists and engaging in management level consulting, with favorable results.

**B.** **History of EEO Activity and Discrimination By Management.**

9. Gorrasi's status as Hispanic, over 40, and disabled has been a frequent factor in employment decisions pertaining to her advancement. She has filed several EEO complaints, including non-selection complaints in 2008 and 2012 and harassment complaints in 2012 and 2014.

10. Gorrasi's third line supervisor was Julie Berko. Beth Chandler was Gorrasi's second line supervisor and Roman Lesiw was Gorrasi's third line supervisor.

11. Ms. Berko sees Workforce Relations, the directorate of the Office of Human Resources where Gorrasi is employed, as a close organization with its top management or leaders shadowing her. Ms. Berko has expressed views as to the "culture" of her organization and whether certain candidates fit within that culture.

12. Ms. Berko has also made public comments concerning the age of employees. She has publicly questioned why employees of a certain age do not retire. Gorrasi has been encouraged or asked to retire because she is eligible.

13. Gorrasi has observed that Hispanic and African American employees, particularly those with prior complaints of discrimination, are routinely passed over for selection by

management for high-level positions, despite their experience.  These individuals are also subjected to unfair discipline, harassed and treated poorly in the workplace.

14. Gorrasi has also observed that younger individuals are favored over those her age.  Mr. Lesiw and Ms. Chandler, both of whom were selected over Gorrasi for GS-15 positions, are substantially younger than Gorrasi.

      C.     **<u>Gorrasi's First Line Supervisor Subjected Her to Harassment and Hostility</u>**.

15. Mr. Lesiw engaged in a regular pattern of hostility towards Gorrasi which was not prevented or corrected by management.  Mr. Lesiw yelled at Gorrasi, raised his voice and engaged in generally unprofessional and unwarranted conduct in his interactions with her.

16. Although Gorrasi complained to her managers concerning Mr. Lesiw's conduct and other instances of harassment, her complaints were not investigated, Mr. Lesiw was not disciplined and the harassment did not stop.

      D.     **<u>Gorrasi Is Denied The Opportunity to Act as Deputy Director</u>.**

17. In late 2015, Ms. Chandler approached Gorrasi to determine if was interested in the Work Force Relations Deputy Director position.

18. Gorrasi affirmed her interest in the position.  Because Ms. Chandler was serving in the Director of Workforce Relations role, thereby vacating the Deputy Director position, Gorrasi additionally expressed her interest in acting in the position.

19. Acting opportunities were typically rotated amongst potentially eligible employees whose careers or positions in a hierarchical perspective rendered them likely candidates for permanent opportunities.  Team leads positions like Gorrasi's were typically precursor positions to the Deputy Director position.  The expectation was that the opportunity to

act as the Deputy Director would be rotated, as had been the usual past practice.

20. Although Ms. Chandler had intended to rotate the position, she changed course when Gorrasi expressed interest. Ms. Chandler told Gorrasi she decided not to rotate the position and instead to place Deborah Coelho in the role.

21. Ms. Coehlo was significantly younger than Gorrasi and white. She had only worked at NIH in Workforce Relations, for approximately three (3) years at the time Ms. Chandler selected her to act, as compared to Gorrasi's 21 years of service to NIH in Workforce Relations.

22. In fact, having only graduated from college in 2001 and obtaining a Masters in 2007, Ms. Coelho only worked in the human resources/employee relations arena for nine (9) years as compared to Gorrasi's forty (40) years of service in this regard and having earned a Juris Doctor.

23. Ms. Coelho acted in the Deputy Director position for almost nine (9) months prior to being selected for the position permanently, giving her an advantage over other candidates in the selection process.

    **E.**     **Management Took Acts to Diminish Gorrasi's Candidacy for the Deputy Director Position.**

24. The day following Gorrasi's declaration of interest in the position and expressed desire to act in the position, Mr. Lesiw presented Gorrasi with a Notice of Proposed Suspension.

25. The allegations supporting the proposed discipline were specious at best. They were certainly inaccurate and failed to rise to the level of an issue, as much as a reason to support disciplinary action. Gorrasi had never been disciplined in her more than twenty year tenure with NIH.

26. In her reply to the proposed suspension, Gorrasi complained of retaliation for engaging in EEO activity involving both Mr. Lesiw, the proposing official, and Ms. Chandler, the deciding official.

27. Gorrasi also complained of a hostile work environment generally and that the proposed discipline was in line with the harassment and designed to preclude her promotion to the GS-15 grade. Despite her complaint of harassment or hostile work environment, the Agency failed to investigate. In fact, Ms. Chandler did not issue a written decision, pursuant to Agency policy and usual procedure. Ms. Chandler did not agree that Gorrasi should be suspended, but did not bother to inform Gorrasi of her decision until more than six months after Mr. Lesiw proposed it.

28. Unsuccessful in their attempts to create a disciplinary impediment in the upcoming selection process for the Deputy Director position, Ms. Chandler and Mr. Lesiw turned to stripping Gorrasi of her supervisory duties. Ms. Chandler removed Gorrasi from her supervisory team lead position and involuntarily reassigned her to a non-supervisory position.

29. Although Ms. Chandler claimed the involuntary reassignment was not disciplinary, the decision materially altered the terms and conditions of Gorrasi's employment by limiting her interface with NIH managers and curtailing her experience as a supervisor. Ms. Chandler had not previously directed an involuntary reassignment.

30. Gorrasi asserted a complaint of discrimination and harassment concerning the involuntary reassignment and Ms. Chandler, although receiving the complaint, took no action.

31. Ms. Chandler and Mr. Lesiw replaced Gorrasi as the team lead supervisor with a significantly younger, white male. After removing Gorrasi from her team lead position, all team

leads were white.

### F. Gorrasi Is Not Selected As the Deputy Director.

32. Gorrasi filed an EEO complaint concerning her non-selection to the Deputy Director position when Ms. Berko selected Ms. Chandler for the position in 2012. Gorrasi's EEO complaint concerning Ms. Chandler's selection to Deputy Director was resolved by settlement.

33. As a part of the settlement agreement, Gorrasi was to be afforded the opportunity to complete the NIH Senior Leadership training program, which is designed to provide participants with the skills and experience to move to GS-15 and higher positions. Gorrasi attended and completed the training.

34. As a part of the settlement, Gorrasi's managers were to notify her of GS-15 opportunities for which she could reasonably be expected to successfully compete. The Agency and Gorrasi's management showed indifference to the EEO settlement and failed to notify her of such opportunities.

35. The NIH Senior Leadership training program, together with Gorrasi's decades of experience in human resources/employee relations/labor relations functions and experience as a supervisor, made Gorrasi leagues more qualified for the Deputy Director position than Ms. Coehlo.

36. Notwithstanding Gorrasi's superior qualifications, Ms. Chandler selected Ms. Coehlo for the Deputy Director position.

## V. CLAIMS

### COUNT I - RACE AND NATIONAL ORIGIN DISCRIMINATION (Title VII)

37. Plaintiff restates and realleges the allegations of paragraphs one (1) through thirty-six (36) as if fully set forth herein and further alleges as follows:

38. Defendant proposed Plaintiff for discipline, stripped of her supervisory duties, denied her the opportunity to act as Deputy Director, and denied her promotion to Deputy Director Director because of her national origin and race.  The employee given the opportunity to act, Deborah Coehlo, was significantly younger and demonstrably less qualified for the Deputy Director position than Plaintiff.  Defendant stripped plaintiff of her supervisory duties and proposed her discipline in order to provide an advantage to Ms. Coehlo in the selection process.

39. As a direct and proximate result of Defendant's discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages.  Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

### COUNT II - HARASSMENT BASED ON RACE AND NATIONAL ORIGIN (Title VII)

40. Plaintiff restates and realleges the allegations of paragraphs one (1) through thirty-six (36) as if fully set forth herein and further alleges as follows:

41. Defendant, to include Plaintiff's supervisors, subjected Plaintiff to a hostile work environment because of her race and national origin.  The harassment was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and to cause Plaintiff to suffer emotional harm, to include stress and mental anguish.  Defendant's failed to investigate

Plaintiff's allegations of harassment and take steps to promptly prevent and correct the harassment.

42. As a direct and proximate result of Defendant's harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages.  Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

**COUNT III - RETALIATION (Title VII)**

43. Plaintiff restates and realleges the allegations of paragraphs one (1) through thirty-six (36) as if fully set forth herein and further alleges as follows:

44. Plaintiff's supervisor and the decision makers were aware of her significant protected activity, namely formal and informal complaints of discrimination and retaliation against her supervisors.

45. As a result of Plaintiff's protected activity, Defendant engaged in conduct which would have dissuaded a reasonable person from complaining, to include proposed discipline, involuntary reassignment and non selection for acting and permanent positions.

46. As a direct and proximate result of Defendant's retaliatory conduct, in violation of Title VII of the Civil Rights Act of 1964, as amended, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages.  Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

**COUNT IV - AGE DISCRIMINATION, HARASSMENT AND RETALIATION (ADEA)**

47. Plaintiff restates and realleges the allegations of paragraphs one (1) through thirty-six (36) as if fully set forth herein and further alleges as follows:

48. Plaintiff's supervisors proposed her discipline, involuntarily reassigned her, refused to allow her to act in the Deputy Director position, and ultimately selected a significantly younger and demonstrably less qualified individual for the position because of Plaintiff's age.

49. Plaintiff's supervisors, through the same acts, subjected her to harassment, which was both severe and pervasive and which impacted the terms and conditions of her employment because of her age.

50. Plaintiff's supervisors also subjected Plaintiff to retaliation because she complained about age discrimination and harassment. Her supervisors engaged in conduct which would have dissuaded a reasonable person from complaining, to include proposed discipline, involuntary reassignment and non selection for acting and permanent positions.

51. As a direct and proximate result of Defendant's retaliatory conduct, in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages. Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

**COUNT V - DISABILITY DISCRIMINATION AND RETALIATION (REHABILITATION ACT)**

52. Plaintiff restates and realleges the allegations of paragraphs one (1) through thirty-six (36) as if fully set forth herein and further alleges as follows:

10

53. Plaintiff's supervisors proposed her discipline, involuntarily reassigned her, refused to allow her to act in the Deputy Director position, and ultimately selected a significantly younger and demonstrably less qualified individual for the position because of Plaintiff's disability (hearing impairment and diabetes).

54. Plaintiff's supervisors, through the same acts, subjected her to harassment, which was both severe and pervasive and which impacted the terms and conditions of her employment because of her disability. Plaintiff's hearing condition caused her to speak loudly and to ask people to repeat themselves and her supervisors expressed disdain and hostility because of her condition.

55. Plaintiff's supervisors also subjected Plaintiff to retaliation because she complained about disability discrimination and harassment. Her supervisors engaged in conduct which would have dissuaded a reasonable person from complaining, to include proposed discipline, involuntary reassignment and non selection for acting and permanent positions.

56. As a direct and proximate result of Defendant's retaliatory conduct, in violation of the Rehabilitation Act of 1975, as amended, Plaintiff suffered and will continue to suffer irreparable harm, pecuniary losses and other damages. Plaintiff is entitled to declaratory relief, injunctive relief, and compensatory damages to make her whole in addition to attorney fees and costs.

**VI.   RELIEF**

Plaintiff requests the following relief:

(1)   An order declaring that Defendant has violated her rights as secured by Title VII of the Civil Rights Act of 1964, as amended, the Age Dicsrimination in Employment Act; and

the Rehabilitation Act of 1975;

    (2)    An order enjoining Defendant against continued and further discrimination, harassment and retaliation against Plaintiff;

    (3)    Compensatory damages in amounts to be determined by a jury;

    (4)    Instatement to a GS-15 position or reinstatement to the supervisory team lead position;

    (5)    Attorney's fees, case expenses and court costs; and

    (6)    Any other relief determined appropriate.

**JURY DEMANDED.**

Respectfully submitted:                                                                                                                      August 28, 2019

_____
Eden Brown Gaines #489862
Brown Gaines, LLC
10 G Street, NE
Suite 600
Washington, DC 20002
Main (202) 248-5040
Fax (301) 542-0032
egaines@browngaines.com